**REVERSE and REMAND; and Opinion Filed January 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00418-CV

### NORTH CENTRAL DISTRIBUTORS, INC, Appellant
### V.
### MINYARD FOOD STORES, INC., Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-03559**

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Richter[1]
Opinion by Justice Richter

The trial court granted summary judgment in favor of appellee Minyard Food Stores, Inc. (Minyard). Because genuine issues of material fact exist, we reverse the trial court's judgment and remand the cause. Because the facts are well known to the parties and the issues of law are settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Minyard brought this suit for declaratory judgment against appellant North Central Distributors, Inc. (North Central). Minyard seeks a declaration that it is entitled to a setoff of amounts it owes North Central for goods received. The trial court granted summary judgment for Minyard, ruling that Minyard was entitled to a setoff against North Central's receivable and

---

[1] The Hon. Martin Richter, Justice, Assigned

could recover its attorney's fees. North Central raises seven issues challenging the trial court's judgment. In issues three, five, and six, North Central contends the trial court erred by granting summary judgment because genuine issues of material fact exist. We sustain these issues. In parts of its second and fourth issues, North Central also contends that the trial court erred by not granting its cross-motion for summary judgment. We overrule these complaints. We need not reach North Central's remaining issues.[2]

Although only North Central and Minyard are parties to this lawsuit, several other individuals and entities are involved in the dispute. The record reflects that the receivable Minyard seeks to offset was originally owned by an entity called NCD Acquisition, L.L.C. (NCD Acquisition). North Central contends that NCD Acquisition was formed in 2006 when Joseph and Gretchen Minyard Williams purchased the assets of North Central's business. The record reflects that North Central financed the purchase of NCD Acquisition through a promissory note and security agreement. Prior to the purchase, North Central had distributed tobacco products and other goods to Minyard stores. After the purchase, NCD Acquisition continued this business relationship with Minyard. After several years, NCD Acquisition defaulted on the promissory note to North Central. North Central foreclosed on NCD Acquisition's assets in early 2010.

Before the foreclosure by North Central, NCD Acquisition had distributed goods to Minyard for which Minyard had not paid. In its original counterclaim, North Central alleged that the fair market value for these goods at the time Minyard took possession was $371,325.12.

---

[2] North Central's issues are (1) the summary judgment motion was "not a proper summary judgment motion;" (2) the trial court erred in granting Minyard's summary judgment motion and denying North Central's because Minyard's claims were barred by res judicata, collateral estoppel, or the compulsory counterclaim rule; (3) the trial court erred in granting summary judgment declaring that Minyard was entitled to an offset and to the affirmative defense of offset; (4) the trial court erred in granting Minyard's request for declaratory judgment and denying North Central's summary judgment motion on the same grounds; (5) the trial court erred in granting summary judgment on the amount of the alleged offset as genuine issues of material fact exist regarding the amount of the offset; (6) the trial court erred in granting Minyard's summary judgment on North Central's causes of action because genuine issues of material fact exist; and (7) the trial court erred in awarding attorney's fees and expenses to Minyard.

In 2009, Minyard assigned a lease for warehouse space in Coppell, Texas, to NCD Acquisition. The lessor was KTR Coppell, LLC (KTR), an unrelated entity; Minyard was the original tenant. At the time of the assignment, Minyard subleased a portion of the premises back from NCD Acquisition. Another portion of the premises was used by a printing business called Momentum Advertising and Communications, L.P. (Momentum). Although KTR consented to the assignment, Minyard remained liable on the lease.

After NCD Acquisition failed to pay rent under the lease for several months in 2009, KTR sued both NCD Acquisition and Minyard for the amounts due. North Central was not a party to this lawsuit. The lawsuit was settled by written agreement effective May 27, 2010. Joseph Williams signed the settlement agreement on behalf of NCD Acquisition (as "Its Member"), Momentum (as the Member of Momentum's General Partner, Momentum GP, L.L.C.), and individually. The settlement agreement, however, expressly provided that Minyard did not release "any claim or right of offset" against "NCD [Acquisition] and/or North Central," and expressly excepted claims pending in this lawsuit from the releases.

In this lawsuit, Minyard does not seek to recover in damages the amounts it paid to KTR to settle KTR's claims. Instead, Minyard seeks a declaration that it is entitled to a setoff of North Central's claim for NCD Acquisition's unpaid receivable because North Central has no defenses against setoff, and the setoff exceeds any amount due on the receivable. The trial court's summary judgment states that Minyard "is entitled to a setoff in the amount of $832,462.50 against the account receivable that is the subject of this lawsuit," and orders that North Central take nothing on its counterclaims. In this appeal, North Central contends that genuine issues of material fact exist on both the existence and the amount of the offset. Because we agree, we reverse the trial court's judgment and remand the cause for trial.

STANDARD OF REVIEW

Minyard sought summary judgment on both traditional and no-evidence grounds. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.,* 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz,* 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id*. When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983)).

In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon,* 690 S.W.2d at 549; *In re Estate of Berry,* 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller,* 168 S.W.3d at 824. We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

The trial court also denied North Central's motion for summary judgment. When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 881–82 (Tex. App.—Dallas 2007, no pet.)

### DISCUSSION

In its motion for summary judgment, Minyard described the issue presented as "whether Minyard is entitled to setoff the amounts [NCD Acquisition] owed it against an account receivable between Minyard and [NCD Acquisition], which North Central now holds as a result of [NCD Acquisition's] failure to pay its note to North Central." Minyard contends that NCD Acquisition breached the assignment of lease by failing to pay rent, so that Minyard is entitled to offset[3] "any amounts Minyard owed [NCD Acquisition] for goods sold." Minyard asserts that

---

[3] The record reflects Minyard's use of the terms "offset" and "setoff" interchangeably. As neither party attaches any legal significance to any difference between the terms, we use them interchangeably as well.

–5–

under section 9.404(a) of the Uniform Commercial Code (UCC),[4] North Central's acquisition of the receivable "has no effect on Minyard's right to setoff." *See* TEX. BUS. & COM. CODE ANN. § 9.404(a) (West 2011) (claims and defenses against assignee). Minyard also sought summary judgment on all of North Central's counterclaims and affirmative defenses, arguing that North Central had no security interest in the goods.

Many of these arguments are premised on Minyard's contention that it was a "buyer in ordinary course of business" as defined in the UCC. *See* TEX. BUS. & COM. CODE ANN. § 1.201(b)(9) (West 2009) (definition of "buyer in ordinary course of business"). Whether a party is a buyer in the ordinary course of business is "in the nature of" a defense. *See THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 614 (Tex. App.—Austin 2008, no pet.). The issue is a mixed question of law and fact. *See id.* at 615 (citing *Assocs. Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546, 549–50 (Tex. 1970)). The burden of proof rests on the party claiming the status of a buyer in the ordinary course of business; here, Minyard. *See id.* (citing cases). There was conflicting summary judgment evidence on this question. For example, the parties argued whether Minyard's failure to pay the receivable constituted an attempt to acquire goods in satisfaction of a money debt, so that Minyard would not fall within the statutory definition of a buyer in due course. *See* TEX. BUS. & COM. CODE ANN. § 1.201(9) ("buyer in ordinary course of business" does not include person that acquires goods in total or partial satisfaction of money debt). Minyard relied in part on testimony that NCD Acquisition regularly sold its inventory on account, while North Central relied on testimony that Minyard's withholding payment to NCD Acquisition because of NCD Acquisition's failure to pay rent was not the usual course of dealing between the parties.

---

[4] Article 9 of the UCC has been adopted in Texas as chapter 9 of the business and commerce code. TEX. BUS. & COM. CODE ANN. §§ 9.101–9.809 (West 2009, 2011 & Supp. 2013).

There was also conflicting summary judgment evidence regarding the date on which Minyard offset the receivable. Minyard asserts the offset was made in December 2009, prior to North Central's foreclosure on NCD Acquisition's assets, but also asserts that the amount of the offset was $832,462.50, as the trial court's judgment recites. The summary judgment evidence shows that the $832,462.50 was not incurred until May 2010, as part of the settlement of the lawsuit brought by KTR. There was evidence that in December 2009, the amount of rent outstanding to KTR was less than the North Texas receivable. The date is relevant to Minyard's argument that its setoff right accrued before it had notice of North Central's foreclosure on NCD Acquisition's assets, so that North Central's rights as assignee would be subject to Minyard's right of setoff. *See* TEX. BUS. & COM. CODE ANN. § 9.404(a) (rights of assignee are subject to defenses or claims of account debtor that accrue before notice of assignment).

There was a further dispute regarding the amount of the offset. As noted, the trial court's judgment recites that Minyard "is entitled to a setoff in the amount of $832,462.50 . . . ," the same amount Minyard paid KTR under the agreement to settle KTR's lawsuit against Minyard and NCD Acquisition. The settlement agreement also reflects a payment by Williams to KTR of $300,000. The agreement provides that "[m]ost, but not all" of the amounts paid by Minyard and Williams "constitute the payment of Base Rent and Additional Rent" under the lease, including prepaid rent through late 2012. The agreement provides that amounts of $430,000 and $210,000 are for prepayment of rent for a term beginning on June 1, 2010. NCD Acquisition assigned the lease back to Minyard as part of the settlement.

Thus, more than $600,000 of the $832,462.50 setoff provided in the trial court's judgment may be for future rental payments under a lease in which neither North Central nor NCD Acquisition has an interest, and from which only Minyard will derive any benefit. Minyard argues it has no use for the premises and only agreed to the future rentals in order to

resolve KTR's lawsuit. But the settlement agreement reflects that future rentals may be reduced by several contingencies, including a "true up" based on actual experience. And North Central contends that the $300,000 paid by Williams was payment of the past due rent.

In addition, the KTR settlement agreement resolved an outstanding receivable from Minyard to Momentum of over $81,000, of which some $65,000[5] was to be released. Williams was to remove Momentum's printing equipment out of the leased premises. Minyard agreed to purchase printing services from Momentum in the minimum amount of $5,000 per month for fourteen months commencing after the date of the settlement agreement. North Central, however, introduced some evidence that NCD Acquisition purchased the assets of Minyard's "print shop business" in 2009, and argued that the value of those assets should have been considered in determining the value of the offset. This evidence should have been viewed in North Central's favor. *See Sudan,* 199 S.W.3d at 292. Questions of fact exist regarding the amount Minyard claims as an offset.

Minyard relies on our opinion in *Barclay's American/Businesss Credit, Inc. v. E & E Enterprises, Inc.*, 697 S.W.2d 694 (Tex. App.—Dallas 1984, no writ), arguing that "an account debtor successfully assert[ed] a Section 9.404(a)(2) setoff defense against a secured lender attempting to enforce its security interest in a seller's receivables." But *Barclay's* was not a summary judgment case. There, the parties stipulated to many facts, and the trial court heard additional testimony. *See id*. at 696. The trial court made findings of fact and conclusions of law. *Id*. In the summary judgment context, the trial court cannot resolve issues of fact or make fact findings. *See Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 810 (Tex. App.—Dallas

---

[5] The agreement provides that "Minyard shall pay to Momentum the amount of $15,668, which reflects the portion of the Momentum Receivable that exceeds $81,000. The remainder of the Momentum Receivable is hereby released."

2006, pet. denied) (findings of fact and conclusions of law have no place in a summary judgment proceeding) (citing *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex.1994)).

We conclude that fact issues exist regarding Minyard's right to offset and the amount of the offset, so that Minyard did not establish its right to judgment as a matter of law. We decline, however, North Central's request that we render judgment in its favor. North Central did not establish as a matter of law that res judicata, collateral estoppel, or the compulsory counterclaim rule bar Minyard's claims. *See, e.g., Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992) (under "transactional approach" to res judicata, court must analyze "the factual matters that make up the gist of the complaint" to determine if the causes of action arise out of the same facts). As with Minyard's claims, fact issues remain to be resolved by the trier of fact.

### CONCLUSION

Minyard did not establish that it was entitled to judgment as a matter of law. We sustain North Central's third, fifth, and sixth issues asserting that genuine issues of material fact precluded summary judgment in for Minyard. We overrule the portions of North Central's second and fourth issues in which North Central contends that the trial court erred by not granting its cross-motion for summary judgment. We reverse the trial court's judgment and remand the cause.

/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

120418F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NORTH CENTRAL DISTRIBUTORS, INC., Appellant

No. 05-12-00418-CV       V.

MINYARD FOOD STORES, INC., Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 10-03559.
Opinion delivered by Justice Richter, Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant North Central Distributors, Inc. recover its costs of this appeal from appellee Minyard Food Stores, Inc.

Judgment entered this 21st day of January, 2014.

/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED